IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TODD WOODY,** | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RWT-11-3752 |
| **WARDEN,** | * | |
| *Defendant*. | * | |
| | ** | |

### MEMORANDUM OPINION

Pending is Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 14. Plaintiff filed a response in opposition to Defendant's motion. ECF No. 26. Also pending is Plaintiff's Motion for Injunctive Relief,[1] ECF No. 16, and Motion for Leave to Amend the Complaint. ECF No. 20.

### Background

Plaintiff, Todd Woody, an inmate currently incarcerated at Western Correctional Institution ("WCI"), alleges that in the month of July, 2011, he was assigned to administrative segregation because a prison gang known as the Black Guerilla Family ("BGF") intended to harm him. Plaintiff claims that he was told that an investigation would take place, but he states that no investigation was conducted. ECF No. 1, at p. 1.

Plaintiff states that from July 2, 2011, to August 20, 2011, an inmate known as "Big Joe" who works in the property room at WCI Housing Unit 5, stole Plaintiff's catalog order for an

---

[1] The undersigned issued an Order to show cause upon receipt of Plaintiff's initial Complaint. ECF No. 3. In response to the Order, Defendants' counsel indicated that Plaintiff was currently assigned to housing within the prison that did not expose him to risks of further assaults by other inmates. ECF No. 5.

eight-inch fan. Plaintiff alleges that Big Joe is the leader of another prison gang known as the Aryan Brotherhood, and that Correctional Officer Bradford assisted Big Joe with the theft.[2] *Id.*

On July 28, 2011, an inmate named Scott Williams was allegedly assigned to Plaintiff's cell where he remained until August 17, 2011. Plaintiff claims that Williams assaulted him on at least fifteen occasions and stole over $100 worth of his property. Plaintiff states that Williams committed these acts without fear of reprisal because he is a member of the Aryan Brotherhood and was ordered to act by Big Joe. ECF No. 7, at p. 2.

On August 17, 2011, Plaintiff told prison staff at his monthly administrative segregation review about the property stolen by Big Joe. ECF No. 1, at p. 2. Staff members present at the review were case managers Wilson, Devore, and Clise, as well as Lt. Natale, housing unit manager for housing unit 5. ECF No. 7, at p. 3. Plaintiff claims that he also told the committee that Williams was attacking him and stealing his property and that Plaintiff's attempts to get help from the tier officers were met with admonitions to "lay down" or "act like a man." *Id.* Plaintiff also allegedly told the committee that Williams was acting pursuant to orders given by Big Joe. ECF No. 1, at p. 2. Plaintiff alleges that, in response to his claims, the committee members made jokes about his problems and told him to toughen up and act like a man. ECF No. 7, at p. 3. Lt. Natale then allegedly told Officer Conner to move Plaintiff into a cell occupied by a gang member with a history of attacking cell mates with a razor blade; Plaintiff refused the housing assignment and was charged with a disciplinary violation. ECF No. 1, at p. 2; ECF No. 7, at p. 3. At the adjustment hearing, Plaintiff claims that he told the hearing officer that staff members in

---

[2]  Service was not accepted on behalf of Officers Michael Bradford, and Daniel Conner or Lt. Philip Natale, because they were not named as Defendants until after the Motion for Summary Judgment was filed on behalf of the Warden. ECF No. 19. The Clerk will be directed to add their names to the caption of this case and counsel will be directed to indicate if service will be accepted on their behalf.

Housing Unit 5 were trying to force him into cells with known gang members who intended to harm him. *Id*. at p. 4.

Plaintiff states that on August 19, 2011, he was placed in a cell with an inmate named Jackson, who was known to object to having Caucasian cellmates. Plaintiff states that Jackson has been locked up for over 30 years,[3] and attacked Plaintiff because members of the Aryan Brotherhood told Jackson that Plaintiff informed on members of the BGF at NBCI. ECF No. 7, at p. 4. After being placed in the cell with Jackson, Plaintiff claims that he was beaten up and raped more than eight times between August 19, 2011, and September 14, 2011. *Id*. Plaintiff asserts that he begged several officers for help, but to no avail. Plaintiff alleges that Natale assigned him to Jackson's cell in retaliation for the complaints that Plaintiff lodged concerning Big Joe. ECF No. 1, at p. 2.

On September 14, 2011, during an administrative segregation review, Plaintiff allegedly told case managers Wilson, Clise, Devore, and Natale that Jackson had been beating him and raping him. ECF No. 7, at pp. 4-5. Jackson was moved out of Plaintiff's cell, but no investigation into the assaults followed. *Id*. at p. 5.

Plaintiff states that he filed two separate Administrative Remedy Procedure ("ARP") requests on August 30, 2011, and another on September 8, 2011, but was never interviewed about the assaults he reported. ECF No. 7, at p. 5. On August 10, 2011, and October 13, 2011, Plaintiff claims that he filed ARPs about the property he did not receive (or was stolen from him), but that he did not receive a response to those claims. *Id*. at pp. 5-6. Plaintiff claims that Natale came to his cell on October 27, 2011, and tried to force him to sign off on his complaint regarding not receiving his fan. When Plaintiff told Natale that he knew the Aryan Brotherhood

---

[3]   Jackson is serving a life sentence from November 25, 1983. ECF No. 14 at Ex. 17, p. 37.

leader, Big Joe, had forged the paper work for the fan and that Bradford was involved in the theft, Natale replied that there would be no investigation into Plaintiff's claims. *Id*. at p. 6. On November 6, 2011, Plaintiff filed an ARP stating that Big Joe was threatening him and that there were plans to hurt Plaintiff for reporting theft. On November 22, 2011, Plaintiff's complaint was dismissed by the Warden as moot. ECF No. 7, at p. 7.

Plaintiff claims that on November 28, 2011, at approximately 3:30 p.m., Bradford and another officer handcuffed Plaintiff and his cell mate and came into the cell. Plaintiff alleges that Bradford told him that "inmates get killed here at WCI" and that "we know how to get away with it." ECF No. 7, at p. 7. Plaintiff further alleges that Bradford told him that he better stop complaining about his property being stolen before he loses his life. *Id*.

Plaintiff also claims that on December 13, 2011, Sgt. Broadwater came to his cell and escorted him to Natale's office. Plaintiff states that Natale told him that he was going to guarantee that no gang members were going to hurt him anymore and that he was going to stop the Aryan Brotherhood from stealing his property. ECF No. 7, at p. 8. Plaintiff claims that the following day Big Joe was allowed to walk up and down the administrative segregation tier and offer $250 to anyone who "takes him out" or kills him. *Id*. Plaintiff states that there were officers present at the end of the tier who heard what Big Joe was saying, but that they took no action to stop him. Plaintiff further alleges that Big Joe is permitted to do this on a daily basis without fear of consequence. *Id*.

Plaintiff alleges that on January 11, 2012, at approximately 3:30 a.m., Captain Heinz asked him what he wanted and Plaintiff replied that he wanted to be assigned to protective custody due to all the problems he has been having. Plaintiff claims Heinz responded that the assignment to protective custody would never happen. ECF No. 7, at p. 9. On January 13, 2012,

Plaintiff met with Sgt. Shimko and Sgt. Carder regarding a complaint he had filed on December 22, 2011, about the Aryan Brotherhood offering $250 to any inmate who harms Plaintiff. In response, Shimko and Carder tried to convince Plaintiff to withdraw the complaint. *Id*.

Plaintiff alleges that there is an ongoing problem with the theft of inmate property at WCI by the Aryan Brotherhood. ECF No. 1, at p. 3. He states that among the officers supporting the Aryan Brotherhood are Natale, Conner, and Bradford. ECF No. 7, at p. 9. Plaintiff asserts that when anyone files a complaint regarding the theft of their property, they are punished through cell assignments with inmates who are given permission to assault the inmate targeted for retaliation. Inmates permitted to assault others are given immunity for their acts because officers ignore all cries for help. ECF No. 1, at p. 3.

Plaintiff claims that he has had several hundred dollars' worth of property and commissary taken from him during the period of July 2, 2011, through December 22, 2011. In addition, he claims that he has been assaulted by three separate cellmates. He asserts that there are several officers at WCI who are clearly supporting white supremacy gangs. *Id*. Plaintiff further claims that at some point between August 1, 2010 and April 1, 2011, inmates from Maryland Correctional Training Center ("MCTC") were brought to WCI for temporary housing due to a water-pipe break. ECF No. 7, at p. 10. He claims that there was "a large amount of property" stolen by the Aryan Brotherhood from the MCTC inmates, resulting in numerous complaints filed with the Commissioner of Correction. Despite the complaints, however, Plaintiff claims nothing has changed and all the inmates involved in the thefts still have access to the property room. *Id*.

Defendants assert that Plaintiff has been on administrative segregation at WCI since July of 2011, when he was transferred there from NBCI. ECF No. 14 at Ex. 6, p. 51 and Ex. 17, at p.

87.[4] Plaintiff's assignment to administrative segregation was prompted by his multiple claims of being assaulted and fear for his safety. *Id*. at Ex. 14. Specifically, Plaintiff was moved to administrative segregation because of his claim that the BGF was threatening his safety. *Id*. at Ex. 9. Defendants claim that "every attempt has been made to ensure Mr. Woody is not housed with known members of the BGF." *Id*. at ¶ 3.

Defendant Natale states that Plaintiff had trouble with his cell partner on two separate occasions. On August 17, 2011, Plaintiff claimed that Scott Williams was assaulting him in their cell and Natale moved Plaintiff to another cell "even though [he] did not have any injuries to substantiate his claims." *Id*. at ¶ 4. On September 14, 2011, after Plaintiff claimed that his cellmate Cordell Jackson was assaulting him, Jackson was moved out of the cell. Again, Plaintiff did not have injuries to substantiate his claim. *Id*. Natale opines that Plaintiff has been attempting to obtain protective custody status by manipulating any means necessary to achieve the goal. *Id.*

Defendants claim that the first notice they received of Plaintiff's claim that he was sexually assaulted by Jackson was the instant civil action. ECF No. 14 at Ex. 16. An internal investigation conducted in response to the allegation included interviews of Plaintiff and Jackson as well as Conner, Shimko, Tichnell, and Natale. Jackson denied the allegations against him and the correctional employees denied knowing there was a problem between the two inmates for the

---

[4] The initial assignment to administrative segregation notes that Plaintiff was stabbed while housed at NBCI on March 18, 2010. The inmate who stabbed him, Raymond Jones, was his cellmate while the two were assigned to administrative segregation. Jones was placed on Plaintiff's enemy list. Plaintiff was transferred to WCI after the assault as a general population inmate, but Jones was also moved to WCI and assigned to the same tier as Plaintiff, who claimed he was afraid to come out of his cell because Jones was telling all the BGF that Plaintiff was a snitch. After verifying that Jones and Plaintiff were cellmates at NBCI for 16 days, Plaintiff was moved to administrative segregation at WCI. ECF No. 14 at Ex. 17, at p. 87.

27-day period (from August 18, 2011 to September 14, 2011) during which Jackson and Plaintiff shared a cell. It was also noted that Plaintiff regularly files ARP complaints, but none filed during the relevant time frame concerned his issues with Jackson. *Id*. at pp. 8-9. The investigation concluded as follows:

> Even though Inmate Woody claimed that these assaults occurred over a 27 day period, he had daily opportunities to report his claim to staff and Case Management. He often would have been separated from his cellmate during showers, rec, Medical and Segregation Reviews and certainly would have been able to share this information with others. . . . There is absolutely no evidence or information to support Inmate Woody's claim that he was previously sexually assaulted.

ECF No. 14 at Ex. 16, p. 10.

Plaintiff's ARP complaint that Big Joe was offering all inmates on his administrative segregation tier $250 from the Aryan Brotherhood for stabbing Plaintiff was dismissed as moot because there was an ongoing investigation into the claims. In addition, it was noted that because the instant civil action was pending, no further action would be taken through the ARP process. ECF No. 14 at Ex. 17, p. 90. Plaintiff has also persisted in attempting to have his allegedly stolen property replaced. *Id*. at p. 93. Natale addresses Plaintiff's claims regarding his stolen fan as follows:

> I was made aware of Mr. Woody's claims that his fan was stolen in early January 2011. I contact (sic) Officer M. Bradford (HU#5 property room officer) concerning Mr. Woody's claims. I was informed by Officer Bradford that Mr. Woody was escorted to the property room to obtain a replacement fan, but Mr. Woody refused to accept the new fan. I received information from a confidential inmate informant[5] that Mr. Woody stated he refused the fan in an attempt to cause problems for myself and Officer Bradford. Officer Bradford has 23 years in the DPSCS and has been assigned to HU#5 property room for over a year without ever having any problems or being accused of misconduct. It is not even imaginable for a man with this much experience and years invested in the DPSCS to jeopardize his employment and integrity over an 8 inch fan.

---

[5]   *See* ECF No. 14 at Ex. 10.

ECF No. 14 at Ex. 9, ¶ 5.

With respect to Plaintiff's claims of harassment and threats by inmate "Big Joe" (Joseph Leisler), Natale investigated the claim and found no evidence to support these allegations. ECF No. 14 at Ex. 9, p. 2. In addition, Natale denies ever receiving claims from MCTC inmates that their property was stolen and asserts that the allegation is simply another attempt by Plaintiff to fabricate allegations against staff. *Id*. Natale further alleges that he is not partial to any particular Security Threat Groups ("STG"),[6] but admits that members of STGs are assigned to work in the unit he supervises. Included among the inmate workers are members of the BGF, Aryan Brotherhood, and MS-13. *Id*. Natale explains that inmates are hired for institutional jobs based on their adjustment history and overall institutional behavior. Membership in an STG does not disqualify inmates from employment as a tier worker because employment provides incentive to remain infraction-free, and earn better jobs and housing assignments. *Id*. In short, employing inmates with gang affiliations helps to ensure that they do not engage in behavior that endangers the safety of others.

After Defendants filed a Motion to Dismiss or for Summary Judgment, Plaintiff filed correspondence which was construed as a Motion for Preliminary Injunction. ECF No. 16. In the letter, Plaintiff alleges that he was assaulted again by another cellmate on April 28, 2012. Plaintiff was allegedly bitten and stabbed by his cellmate during the assault. Plaintiff states that the attack was carried out as part of the orders issued by the BGF to cause him physical harm,

---

[6] Officers Conner and Bradford also deny showing favoritism to members of any particular STG. ECF No. 14 at Exs. 8 and 11.

but the allegation was not investigated.[7] *Id*. Counsel was directed to respond to Plaintiff's claims.

In response to the show-cause order, Defendants admits that Plaintiff was assaulted by his cellmate, Daniel Turner. ECF No. 23. Plaintiff suffered seven bite marks on his upper torso that broke the skin, six superficial lacerations to his face, and an open wound to his second, right knuckle. *Id*. at Ex. 4. Both inmates were charged with violating institutional disciplinary rule 102, which prohibits assault or battery of another inmate, but Plaintiff was found not guilty of the charges because it was determined that he was the victim of an assault by Turner. *Id*. at Ex. 7, p. 2 and Ex. 8, p. 3. At the time of the assault, both men were assigned to administrative segregation and had shared a cell for more than twelve days before the assault took place. ECF No. 23, at p. 3. Defendants maintain that it was impossible for staff to predict that Plaintiff and Turner were going to have problems since neither inmate reported a problem before the assault. *Id*. at Exs. 1. There is no indication that an investigation into the reason for Turner's assault on Plaintiff was conducted.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion, as follows:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an

---

[7] In a more recent correspondence, Plaintiff alleges that the stabbing was ordered by Officer Bradford and, despite the attack, case management staff is trying to transfer Plaintiff to general population housing at WCI. ECF No. 25.

>otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

The "party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Injunctive Relief**

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

**Analysis**

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Plaintiff must establish that Defendants exhibited deliberate or callous indifference to a specific

known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *see also Rich v. Bruce*, 129 F. 3d 336, 339-40 (4th Cir. 1997). To survive summary judgment, Plaintiff "must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future." *Farmer*, 511 U.S. at 846.

In his Response in Opposition, Plaintiff disputes Defendants' assertions of fact regarding receipt of his replacement fan. ECF No. 26, at pp. 2-3. Plaintiff attaches a copy of a property receipt form showing a signature (not his own) indicating that the fan was received. *Id*. at Ex. 3. He concludes that this establishes that Defendants Bradford and Natale are lying about the existence of a theft ring in the prison which is run by the Aryan Brotherhood and facilitated by prison staff. *Id*. at pp. 2-3. The evidence submitted by Plaintiff does not, however support the conclusion he advances. Plaintiff maintains that he never received the fan. *See* ECF No. 26 at

Ex. 6. Defendant Bradford avers that when he attempted to deliver the fan, Plaintiff refused to relinquish his old fan in exchange for the new fan and, therefore, the new fan was not provided to him and was returned to property room inventory. *See id*. at Ex. 10. Plaintiff's ARP regarding his missing fan was initially dismissed because the signature on the property receipt form was presumed to be his and was relied upon as proof that he received it. *Id*. at Ex. 1. Later, when Plaintiff appealed the response, it was admitted that Plaintiff had not received the fan he ordered but had been provided with another fan and an investigation was being conducted to determine what happened to the ordered fan. *Id*. at Ex. 8. Part of that investigation includes the letter provided to Natale by another inmate indicating that Plaintiff was attempting to cause trouble for Bradford through the property-related claims. The evidence submitted establishes, at best, confusion regarding the delivery of Plaintiff's fan. Moreover, the dispute does not concern a material fact regarding Plaintiff's Eighth Amendment claim. It is protection from the violence of other inmates that is the focus of the claim, not protection from theft of property. *See Farmer*, 511 U.S. at 837.

Plaintiff has not properly opposed the Motion for Summary Judgment,[8] which is only supported by declarations made under oath. However, it is undisputed that while this case has been pending, Plaintiff suffered at least one attack by another cellmate which resulted in his physical injury. ECF No. 23. Although Defendants assured this Court that Plaintiff's assignment to administrative segregation limited his exposure to inmates who may cause him harm, all of the assaults he alleges occurred while he was so assigned; the most recent assault is admitted by Defendants. It is difficult to discern whether Plaintiff's claims about injuries, whether real or imagined, are the result of deliberate indifference or the inevitable consequence

---

[8] None of Plaintiff's Responses is made under oath. ECF Nos. 18, 19, 20, and 26.

of the rigors of prison life.  The Court, however, is mindful of Plaintiff's self-represented status and his limited access to legal assistance.  The Court is reluctant to grant summary judgment in favor of Defendants simply because Plaintiff has failed procedurally to properly oppose the motion, in light of Plaintiff's recent undisputed injuries.

To ensure that justice is properly served in this case, counsel will be appointed for Plaintiff and Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 14, will be denied without prejudice, subject to renewal at a later date.  In order to assure that Plaintiff remains free from violent assaults pending the outcome of this case, the Court will grant Plaintiff's request for preliminary injunctive relief and require his assignment to protective custody in a single cell pending further order of the Court.  Appointed counsel for Plaintiff shall assess the factual basis, if any, for Plaintiff's claims, and determine whether such claims can and should be asserted consistent with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

A separate Order follows.


Date: <u>November 5, 2012</u>                                   /s/
                                                      ROGER W. TITUS
                                                      UNITED STATES DISTRICT JUDGE